## [No. 3548.]

### *Ex Parte* Horace Matlock.

HABEAS CORPUS FOR BAIL.— See this case for evidence upon which the court of appeals, overruling the court below, allows bail to a party indicted for murder.

APPEAL from the District Court of Tarrant. Tried below before the Hon. R. E. Beckham.

On January 16, 1885, the grand jury of Tarrant county presented an indictment charging Horace Matlock, the appellant, with the murder of W. A. Youngblood, on the 29th of the preceding December, by shooting him with a pistol. Soon afterwards, being in arrest under a *capias* issued upon the indictment, he applied for and obtained the writ of *habeas corpus* for the purpose of determining his right to give bail. The court below, upon a hearing of the evidence refused bail, and hence this appeal.

In the brief and argument filed in this case by the appellant's counsel, the evidence is condensed with accuracy and fairness, and the legal positions and authorities are presented tersely and without circumlocution.

*Furman & Stedman,* for the appellant. Appellant prosecutes this appeal from the judgment of the district court of Tarrant county refusing him bail upon the hearing of a writ of *habeas corpus.* The only question to be considered is: as to whether the proof is evident that the appellant is guilty of murder in the first degree. If the proof is evident that he is guilty of murder in the first degree, then the judgment of the court should be sustained. If the proof is not evident of appellant's guilt of a capital offense, then the question of bail is not a matter of discretion with the court trying the cause, but under the Constitution and statute the appellant is entitled to bail as a matter of right. For the purpose of this argument we accept as correct the rules laid down by the court in *Foster* v. *The State,* 5 Texas Ct. App., 647, in defining the meaning of the term "proof is evident."

1st. "A safe rule, where a malicious homicide is charged, is to refuse bail in all cases when a judge would sustain a capital conviction, if pronounced by a jury, on such evidence of guilt as was exhibited to him on the hearing of the application to admit to bail."

2d. "If the evidence is clear and strong, leading a well guarded

and dispassionate judgment to the conclusion that the offense has been committed, that the accused is the guilty agent, and that he would probably be punished capitally if the law is administered, bail is not a matter of right."

We understand the above definitions to mean that upon the hearing of an application for bail the judge sits as a jury as well as a judge, and that if the evidence is such as satisfies his mind, under the rules of law (as to presumption of innocence and reasonable doubt) which would be given in a charge to the jury, that the jury would be warranted in convicting the defendant of murder in the first degree and of assessing his punishment at death, and that such would probably be the result of their deliberation, then bail should be refused; otherwise that it would be a matter of right.

Apply this rule to the evidence in the case at bar, and we respectfully submit that the evidence is not clear and strong, and "such as would lead a well guarded and dispassionate judgment" to the conclusion that this appellant is guilty of murder in the first degree, and that he would probably be punished capitally. Neither is the evidence such as would authorize a court in sustaining a conviction of this character, even if a jury should arrive at any such conclusion. There is nothing like the evidence of premeditation and deliberation that there was in the case of *Kemp* v. *The State*, 11 Texas Ct. App., 474, and yet in that case this court refused to sustain a capital conviction.

In the first place we call the attention of the court to the fact that the appellant was drunk at the time of the homicide. While drunkenness is no excuse for crime, yet in cases of this kind it may be looked at as explaining the state of appellant's mind, and showing what his intentions really were at the time of the homicide. (*Brown* v. *The State*, 4 Texas Ct. App., 291.)

Any one who has the least acquaintance with human nature, and has had any opportunity of observing the effects of liquor upon men, knows full well that men, when drunk, make use of language without considering its import. Who is there that holds a poor drunken fellow to the same strict account for words spoken while in a state of intoxication, he would hold the same party to for the same language if uttered in sober moments? As fair minded men, who desire to form a "well guarded and dispassionate judgment," in such cases as this, we cannot shut out from our minds the condition of the party at the time of the homicide. We call the attention of the court to the further fact, that the record fails to show that the appellant had ever entertained the

least unkindness of feeling toward the deceased before the fatal afternoon on which the homicide occurred. Previous to the difficulty, which was brought on solely by the deceased, appellant is not shown to have even threatened deceased, or to have sought him, or to have in any manner anticipated a difficulty with him. The record is silent on these important subjects, and the court cannot and will not presume something to have existed which was not proven. We further call the attention of the court to the fact that, prior to the fatal meeting, deceased had threatened to take appellant's life, and was hunting for appellant, cursing him, saying that he would kill him, he would stamp h—ll out of him, and making other threats of a kindred nature.

Again, it will be noticed that when defendant and appellant met at the bar of the saloon, and when deceased asked appellant to treat, that appellant answered jokingly " that he was busted." Appellant was not then angry or in a bad humor.

Deceased then told defendant that he owed him a bill and asked him to pay it. Appellant said that he did not owe it. No unpleasant temper was yet shown by appellant; no former grudge, no compassing, no antecedent malice. Deceased then says, " you do owe it, and if you do not pay it I will whip you." Appellant gives deceased the lie, and deceased strikes him.

Take the evidence as to the prior language of each party with reference to and toward the other, and can it be fairly and reasonably said that appellant was in any wise responsible for this difficulty. He is publicly dunned. His life had been threatened. He simply denied owing the bill. He is then told that unless he pays the bill he will be whipped. He gives the lie to the statement that he owes the bill, and deceased immediately makes an assault upon him.

Is not the former grudge, the antecedent malice and the compassing clearly on the State's side of the case and not on ours? But it may be contended that there is express malice shown in the fact that, when deceased first struck appellant, appellant threw his hand behind him to the place where he carried his pistol. The facts of the case would not justify a " well guarded and dispassionate judgment " in arriving at any such conclusion. It must be remembered that deceased was the larger man ; and that the deceased had threatened to kill appellant, and had said he would stamp h—ll out of appellant. He had publicly insulted appellant by dunning him in the presence of his friends at the bar, and, when appellant said that he did not owe deceased anything, the deceased reiterated the dun,

and, to add further insult and provoke a difficulty, said "that he would whip appellant if he did not pay the alleged debt." And when appellant, with a proper sense of self-respect, gave the lie to deceased's statement, deceased then struck appellant, and appellant with all of these facts before him threw his hand on his pistol. There is no evidence that he drew or attempted to draw the pistol, or that he followed or attempted to follow deceased, who was put out of the house.

In reply to this it will doubtless be urged that, after deceased had been put out of the saloon by third parties, appellant was heard to say by one of the witnesses, that if he had been let alone he would have killed the d——n son-of-a-b——h. It is worthy of remark in this connection that, although there were a number of persons present, only one witness claims to have heard this language, and that the others all swear that they did not hear such language used by appellant. This language is not indicative of malice; it is not a declaration as to what appellant intended to do in the future. Under the circumstances which had just transpired it could not in any sense be considered as a threat. Appellant made no effort to follow deceased. He only acted on the defensive. The language doubtless was caused by his drunken condition. There was no deliberation about it. His mind was excited with drink. His anger had been aroused by the threat to whip him; by the public dun for a disputed account; by the evident intention on the part of the deceased to bring on a difficulty with him, and then by the unjustifiable assault made upon him by deceased, a man who was his superior in strength, and who was from fifteen to thirty pounds heavier than appellant.

Again: When deceased reappeared upon the scene appellant made no effort to use the pistol until deceased had again assaulted him, and had caught him by the collar or throat, and pushed him back about twenty feet against a barrel. But it may be claimed that when deceased returned to the saloon he came back with the intention of making friends with appellant. This is only the inference of one of the witnesses. There is no proof which warrants that conclusion, and it is manifestly at variance with the previous conduct and language of deceased, and with his conduct just after he entered the saloon. It is true that he advanced to appellant and said, " I am your friend, have we not always been friends?" but when appellant said, "yes, but I do not like the way you pushed me around or shoved me around," deceased promptly denies having made the assault upon appellant, which is testified to by all of the witnesses. The witnesses are divided as to who gave the lie first, but they all

agree that it was the deceased who struck the first blow in this the last and fatal difficulty. Not content with striking this blow, he follows it up, presses appellant to the wall, and the shot is fired which ends his life. We submit that under the proof there was no deliberation, no cooling time, no malice — that at worst it was but the rash, inconsiderate impulse of a moment; that appellant's mind was incapable of cool reflection; that it was agitated by anger, terror, rage and sudden resentment produced by an adequate cause; and that the most that the State could ask would be a conviction for manslaughter. In saying this we do not desire to be understood as entering a plea of guilty to manslaughter, for we believe this case presents fairly a legal case of self-defense. We simply desire to be understood as saying that at the very worst it is no more than manslaughter. It is immaterial whether blood was drawn or not. It is immaterial whether great pain was caused or not. If pain was caused, then under the statute adequate cause existed; and it is immaterial as to the degree of pain. Without discussing the law of the case in detail we respectfully call the attention of the court to the following authorities, which are believed to be pertinent to the issue: *McCoy* v. *The State*, 25 Texas, 33; *Thompson* v. *The State*, 25 Texas Sup., 398; *Cooper* v. *The State*, 31 Texas, 185; *Farrer* v. *The State*, 42 Texas, 271; *Burnham* v. *The State*, 43 Texas, 327; *Perry* v. *The State*, 44 Texas, 479; *Primus* v. *The State*, 2 Texas Ct. App., 379; *Cook* v. *The State*, 2 Texas Ct. App., 388; *Brown* v. *The State*, 4 Texas Ct. App., 29; *Foster* v. *The State*, 5 Texas Ct. App., 625.

*J. H. Burts*, Assistant Attorney-General, for the State.

White, Presiding Judge. This is an appeal from a refusal of the district judge to grant bail upon an application by *habeas corpus*. We have examined the evidence, as shown by the statement of facts in the record, most carefully, and our conclusion therefrom is that the applicant is entitled to bail. From the proofs on the subject we are of opinion the amount of the bail should be fixed at the sum of $3,000. Bail is fixed at that sum, and upon applicant's entering into bond in said amount with approved security, the bond being conditioned as the law requires, the sheriff of Tarrant county will release said applicant from custody.

*Reversed and bail granted.*

[Opinion delivered May 16, 1885.]